No. 327 May 15, 2024 627

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

AARON SCOTT KINGSTON,
*Defendant-Appellant.*

Linn County Circuit Court
21CR25492; A178945

Brendan J. Kane, Judge.

Submitted March 8, 2024.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Daniel C. Bennett, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Julia Glick, Assistant Attorney General, filed the brief for respondent.

Before Shorr, Presiding Judge, Mooney, Judge, and Pagán, Judge.

PAGÁN, J.

Affirmed.

**PAGÁN, J.**

Defendant appeals the judgment of conviction for eight felony counts related to child sexual abuse. He assigns error to the sentencing court imposing the statutory presumptive sentence of lifetime imprisonment on each count. Defendant argues that, as applied to him, the presumptive sentence is unconstitutionally disproportionate under the state and federal constitutions. The state argues that, considering defendant's conduct and the circumstances of the present convictions, and defendant's criminal history, the sentences are not disproportionate. We affirm.

Defendant was charged with 10 counts of first-degree encouraging child sexual abuse, ORS 163.684 (Counts 1-10), two counts of attempted luring a minor, ORS 167.057 (Counts 12-13), and one count of attempted first-degree online sexual corruption of a child, ORS 161.405 (Count 11). In a plea agreement, he pleaded no contest to Counts 1 to 7 of first-degree encouraging child sexual abuse, and to Count 11, attempted first-degree online sexual corruption of a child. The other counts were dismissed. Sentencing was left open. The state recommended that the court impose the statutory presumptive sentence of life in prison without the possibility of release or parole, which applies when the court imposes a sentence for a sex crime that is a felony "if the defendant has been sentenced for sex crimes that are felonies at least two times prior to the current sentence." ORS 137.719(1). The sentencing court imposed the presumptive sentences on each of defendant's convictions.

We review for legal error whether a sentence violates constitutional proportionality requirements. *State v. Ryan*, 361 Or 602, 614-15, 396 P3d 867 (2017). Article I, section 16, of the Oregon Constitution provides that "[c]ruel and unusual punishments shall not be inflicted, but penalties shall be proportioned to the offense."

To determine whether a sentence is unconstitutionally disproportionate under Article I, section 16, there are three factors we must consider: (1) the severity of the penalty compared with the gravity of the offense; (2) the penalties for the offenses, compared with those imposed for other,

related crimes; and (3) the defendant's criminal history. *State v. Rodriguez/Buck*, 347 Or 46, 58, 217 P3d 659 (2009). The severity of the penalty is the amount of time the convicted person must spend in prison for the particular offense. *Id.* at 60. The offense in an as-applied challenge is defined both by the relevant statute and by the convicted person's particular criminal conduct. *Id.* at 62. "Because the legislature has primary authority to determine the gravity of an offense and the appropriate length of punishment, a court may say that a particular punishment is constitutionally disproportionate only in those rare circumstances where the legislature has exceeded that authority." *State v. Delp*, 297 Or App 1, 8, 441 P3d 590 (2019) (internal quotation marks omitted).

Defendant was arrested after arriving at a location where he believed he would meet an 8-year-old child named "Melanie" for a sexual encounter. His phone, which was used to communicate with the fictitious 8-year-old, was confiscated during his arrest, and searched later. Detective King testified at the hearing to finding "a large quantity of child sex abuse material, images and videos" on the storage card. He chose a list of ten specific files to include in a detailed report. Seven of those files correspond to the seven counts of first-degree encouraging child sexual abuse to which defendant pleaded no contest. The files contained graphic images of children being sexually abused, including engaging in explicit sexual acts with adults and other children. Each count involved a different child. These images fit squarely within the accepted definition of what we consider child pornography. ORS 163.665.

We begin by considering the severity of the penalty compared with the gravity of the offense, including the circumstances and conduct specific to defendant's offenses. Defendant compares this case to *State v. Davidson*, 360 Or 370, 380 P3d 963 (2016), in which the Supreme Court reversed the defendant's life sentence on a felony public indecency conviction. While the defendant's prior criminal history was lengthy, *id.* at 376, the court ultimately concluded that the gravity of the defendant's offense was not great because it did not require physical contact with another person, and it

was not as serious as crimes involving nonconsensual sex or sexual conduct targeting children. *Id.* at 387.

Defendant contends that his case is more like *Davidson* than *Delp*, 297 Or App at 8, in which we affirmed the defendant's life sentences for 10 counts of first-degree encouraging child sexual abuse. Defendant notes that in that case, the defendant's conduct was "relatively severe." The defendant had downloaded hundreds of other depictions of abuse, including adults abusing infants and toddlers, and there were depictions of bestiality with children. *Delp*, 297 Or App at 10-11. We explained that, although the defendant had not physically harmed the children in the depictions in that case, they were still harmed with each duplication of the files. *Id.* at 10. Defendant also argues that the defendant's criminal history in *Delp* involved relatively serious convictions for possession of child pornography and first-degree encouraging child sexual abuse.

Defendant argues that, "[a]lthough the images in defendant's case were extremely serious, there is no evidence here that defendant produced or distributed those images—he merely possessed them. And again, while the count related to

'Melanie' involved potentially serious conduct, it also did not involve a real person, merely a fictitious creation who was at no risk of harm."

We conclude that the gravity of defendant's offenses is relatively high here. All of the counts of conviction involved young children, with three counts involving children estimated to be under the age of 10. Four of the counts involved sex acts between adults and child victims, or in one instance, a sex act between child victims. Defendant duplicated the images by downloading them to his SD card. *State v. Pugh*, 255 Or App 357, 365, 297 P3d 27 (2013). By duplicating the images, as explained in *Delp*, defendant caused repeated harm to the children depicted in the images. 297 Or App at 10. Defendant was charged with additional criminal conduct that was dismissed as part of his plea agreement, and King testified that there were numerous additional files on defendant's SD card that contained depictions of child sexual

abuse. In addition, as to Count 11, defendant engaged in communications with someone he believed to be an 8-year-old girl, introduced sexual content to their communications as well as the idea of meeting in person, and then traveled to what he believed to be her home with the intention of raping her. The fact that there was no actual 8-year-old there does not reduce his culpability or suggest that there is less risk that he would engage in such conduct again. Although a life sentence without the possibility of release or parole is severe, defendant's conduct in committing the offenses is not at the margins of the offenses to which the punishment applies.

Turning to the second factor, how the punishment compares with other related crimes, defendant argues that the presumptive sentence based on an 8B gridblock of the sentencing guidelines would have been 45 months on any of the counts. The state responds, however, that the Supreme Court has noted that this factor is less significant when evaluating a sentence imposed under a repeat-offender statute, and that the proper scope of the punishment to consider encompasses the current conviction and the defendant's past qualifying offenses. *State v. Althouse*, 359 Or 668, 685-86, 375 P3d 475 (2016). Comparing that punishment with the punishment for any single related offense does not aid in evaluating the proportionality of the repeat-offender presumptive sentence. *Id.* Viewed in that light, the second factor does not weigh on the side of disproportionality in this case.

In comparing the seriousness of a defendant's crimes with the related offenses that qualify as predicate offenses for purposes of ORS 137.719(1), the Supreme Court has explained that "most of the other felony sex crimes that may result in the imposition of a true-life sentence under ORS 137.719(1) involve nonconsensual sexual contact or sexual exploitation of child victims." *Davidson*, 360 Or at 388. All of defendant's offenses in this case involved at least one of those aspects, and, as we will discuss, his past offenses do as well. Thus, defendant's offenses are comparable with "most of the other felony sex crimes" that qualify for the presumptive sentence imposed under ORS 137.719(1).

Finally, we consider defendant's criminal history. Defendant's prior criminal history includes three felony sex crimes. Over twenty years prior to the time he was communicating with "Melanie," he entered a sorority house, and a bedroom in the house, and sexually assaulted a 19-year-old woman who was in bed, sleeping. Defendant told police that he did not have consent to enter her room, he said that he was "kind of raping her," and he knew that the victim was "kind of awake and kind of asleep." He was convicted of first-degree burglary and attempted first-degree sexual penetration.[1] Defendant was sentenced to probation, received some jail time, and was required to complete sex-offender treatment.

About 14 years later, defendant uploaded images of child sexual abuse to a cloud storage account. The operator of the cloud storage alerted the National Center for Missing and Exploited Children. That organization reported it to the local police. When defendant was interviewed by police about a year later, he admitted to uploading the files. He was convicted of second-degree encouraging child sexual abuse. The court imposed a dispositional departure from the presumptive prison sentence, and ordered defendant to undergo sex offender evaluation and treatment if it was recommended.

Defendant's current offenses, combined with his criminal history, reflect a pattern of "nonconsensual sexual contact," "exploitation of child victims," or both. Given that and the fact that lesser sanctions and sex offender treatment did not deter defendant from committing the present crimes, the sentencing court could reasonably conclude that defendant posed a significant danger to the public, and particularly children. The court could determine that imposing the ORS 137.719(1) presumptive sentence was a way to mitigate the risk to the public.

The sentencing court could also determine that defendant had opportunities to reform his conduct and to refrain from further criminal conduct, but that he continued to pose a grave risk of committing crimes involving nonconsensual sexual contact and the sexual exploitation

---

[1] Because the burglary was based on entry with the intent to commit a sex crime, the burglary also is considered to be a sex crime. ORS 163A.005(5)(z).

of children. Considering all three factors, we conclude that the presumptive life sentences under ORS 137.719(1) are not disproportionate in violation of Article I, section 16.

Defendant argues that his sentences are also disproportionate under the Eighth Amendment to the United States Constitution. We have stated that analysis of the three factors set out in *Rodriguez/Buck* provides a sufficient basis to decide whether a sentence is disproportionate under the Eighth Amendment. *State v. Wiese*, 238 Or App 426, 429-30, 241 P3d 1210 (2010), *rev den*, 240 Or 654 (2011). So, for the same reasons discussed above, we conclude that the sentence is not disproportionate under the Eighth Amendment.

In sum, we conclude that the sentence is not disproportionate under Article I, section 16, or the Eighth Amendment. Accordingly, we affirm the judgment.

Affirmed.